AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) |
| 9274 GREAT LAKES CIRCLE, DAYTON, OH 45458 INCLUDING ALL OUTBUILDINGS, CURTILAGE AND VEHICLES PARKED AT AND/OR ON ADJACENT DRIVEWAY | ) |

Case No.

*FILED*
RICHARD W. NAGEL
CLERK OF COURT
2020 MAR 11 AM 11: 02
U.S. DISTRICT COURT
SOUTHERN DIST
3:20 mj 129

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

### SEE ATTACHMENT A

located in the _____ Southern _____ District of _____ Ohio _____ , there is now concealed *(identify the person or describe the property to be seized)*:

### SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | *Offense Description* |
|---|---|
| 18 U.S.C. § 1343 | Wire Fraud |
| 18 U.S.C. § 1344 | Bank Fraud |
| 18 U.S.C.  §§ 371 and 1359 | Attempt and Conspiracy |
| 18 U.S.C. §§ 1956 and 1957 | Money Laundering |

The application is based on these facts:

### SEE ATTACHED AFFIDAVIT

- ☑ Continued on the attached sheet.
- ☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*James R Teuschl*
*Applicant's signature*

SA JAMES R. TEUSCHL, U.S. SECRET SERVICE
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __3-11-20__

*Sharon L C Ovington*
*Judge's signature*

City and state:  DAYTON, OHIO

SHARON L. OVINGTON U.S. MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT

1.  I, James R. Teuschl, being duly sworn, depose and state that I am currently a Senior Special Agent with the United States Secret Service (USSS) assigned to the Cincinnati, OH Field Office. I have been employed by the USSS since September 2000. During the course of my career, I have received extensive training in white collar fraud investigations. I have personally participated in wide variety of white collar fraud investigations that have focused on various violations of Title 18 of the United States Code. Prior to my current employment, I served as Parole Officer for the State of Ohio.

2.  This affidavit is submitted in support of a search warrant application concerning a residence located at 9274 Great Lakes Circle, Dayton, OH 45458. This application seeks authority to search said residence, the surrounding curtilage, any and all associated sheds and other out buildings, together with any and all motor vehicles that may be found parked on the immediate premises and/or adjacent driveway.

3.  This affidavit is submitted for the limited purpose of establishing probable cause to support the issuance of a search warrant for said residence. As such, your Affiant has not included all facts and details presently known by subject investigation. The facts contained in this affidavit are based upon: information personally known and gathered by your Affiant; information reported to him by other law enforcement officers involved in subject investigation; information contained in witness and victim interviews; and reports of investigation otherwise generated by this investigation.

4.  Based upon the results of the ongoing subject investigation, it is your Affiant's belief that probable cause exists to believe that a person identified as **DARYL HARRISON (aka Daryl Attipoe)**, together with his brother, a person identified as **ROBERT HARRISON**, have unlawfully conspired to commit certain offenses against the United States, to include: Wire Fraud (18 U.S.C. § 1343); Bank Fraud (18 U.S.C. § 1344); Attempt and Conspiracy (18 U.S.C. §§ 371 and 1359); and Money Laundering (18 U.S.C. §§ 1956 and 1957). As such, probable cause further exists to believe that certain relevant criminal evidence, together with fruits, and instrumentalities of such violations, (as more specifically described in Attachment "B") are currently is located at the above listed residence.

### Summary of the Facts

5.  On or about December of 2019, USSS Agents were alerted by reliable bank officials that a possible fraud scheme may be impacting one or more of that bank's customers. This belief on the part of bank officials stemmed from the discovery of certain highly "suspect" financial transactions involving certain deposits made at First Financial Bank (FFB). This suspected fraud scheme specifically involved a bank account controlled by an entity known as the *Power House of Prayer Ministries* (PHOP). The PHOP's FFB account was originally opened by **ROBERT HARRISON** as a non-profit ministry account. This account has been linked to his brother **DARYL HARRISON**.

6.    Certain checks that had been deposited into this PHOP bank account were observed to have notations indicating they were made for purported "ownership" and "investment" purposes. Said checks totaled in excess of $550,000, and originated from a single person spanning a two year time period. During the examined time period, eighteen specific checks totaling $605,500.00 were found to have been deposited into this PHOP bank account. Fifteen of these checks were issued by one particular individual totaling $548,500.00, later identified to be "P.B.".

7.    Based upon receipt of said information, a more intensive examination of the financial records of **ROBERT HARRISON** and **DARYL HARRISON** was undertaken. Interviews of "P.B." confirmed that she had in-fact been victimized by an investment fraud scheme hatched and executed by **ROBERT HARRISON** with the knowledge, assistance and support of his brother **DARYL HARRISON**.

8.    "P.B." advised investigators that in the fall of 2017, she first met a black male at the Mainville, OH Kroger's Grocery Store where she is employed. She later came to know this individual as "Prince Daryl Attipoe." "P.B." positively identified this same person to investigators as **DARYL HARRISON** based upon a review of Ohio BMV photos which were displayed to her.

9.    "P.B." further advised investigators that **DARYL HARRISON** convinced her to "invest" substantial amounts of her personal funds with him. These funds purportedly were to be invested in various "chrome/diamond mines, trucking and real estate ventures located in both Africa and the U.S." "P.B." presented investigators with copies of numerous cancelled personal checks, bank cashier checks, cellular phone text messages, cellular voicemails, assorted paperwork and contracts all of which were associated with her supposed investments and interactions with **DARYL HARRISON**.

10.   **DARYL HARRISON** provided "P.B." certain contractual documents which listed the NewMax Group of Ghana, Africa, as the commercial entity her investments were supposedly linked to. **DARYL HARRISON** specifically instructed "P.B." to annotate on her investment checks that they were made payable to "PHOP" (*Power House of Prayer Ministries*) and not the NewMax Group or Daryl "Attipoe". In retrospect this was unusual request due to the fact the investments were contractually intended for the NewMax Group. **DARYL HARRISON** further advised "P.B." that she, in reality was purchasing Harrison's personal investments/ownership in the NewMax Group. **DARYL HARRISON** further instructed "P.B." to make all her investment checks payable to "PHOP," which was purportedly his charitable entity. "P.B." tendered all of her investment checks personally to **DARYL HARRISON**.

11.   "P.B." never received any tangible benefit from her investments. This was in direct contravention to the contractual guarantees **DARYL HARRISON** had provided her. Part of "P.B.'s" written contractual guarantees included assurances that all of her investment funds: were fully secure; available to be withdrawn at any time; would generate higher than normal returns.

2

12. Based upon a thorough review of relevant bank and financial records, investigators identified a second fraud victim who was identified as "A.R." "A.R." advised investigators that in late January-early February, 2018 in Cincinnati, OH she first met a black male she came to know as "Daryl". During the 2018 time frame she provided this individual two checks totaling $47,000.00 from her personal funds. She provided "Daryl" these monies supposedly to be invested in "chrome/diamond mines in Africa." "A.R." positively identified this person as **DARYL HARRISON** through a review of BMV photos displayed to her by investigators. "A.R." stated these investments were designed to yield a higher than normal returns. "A.R." further stated she was told by "Daryl" to make the investment checks out to "PHOP," his reported charitable entity. "A.R." last had contact with "Daryl" in March 2018. She has not received any further contract(s), business prospectus, quarterly statements or any other information from "Daryl" since then.

13. A close review of PHOP's FFB bank records reveal that **ROBERT HARRISON** was the depositor/endorser of twenty-eight suspect checks associated with PHOP. It has also been discovered that **ROBERT HARRISON** would routinely withdraw funds from this PHOP account via counter checks drawn for cash in typical daily increments of $2,000-4,000. This practice would continue until the account balance was zeroed out, or reached the minimal required balance needed to keep the account open.

14. A review of the Ohio Secretary of State's internet web site has revealed **DARYL HARRISON** and **ROBERT HARRISON** were linked individually and jointly to one non-profit and/or six LLC's (4A Capital Group LLC, Harrison and Harrison Home and Investments LLC, Top Notch Rehab & Remodeling LLC, NESSH LLC, New Max Groups LLC, Power House of Prayer Ministries and The A.R.T. Group LLC). Both individuals' Ohio BMV records reflect the same home address of 9274 Great Lakes Circle, Dayton, OH 45458. This same address was also listed for the Agent/Registrant filings for four of the said LLC's. **ROBERT HARRISON** is known to reside at 9274 Great Lakes Circle, Dayton, Oh 45458.

15. A review of various online databases has revealed no known or otherwise verifiable physical locations for any of the said LLC's or non-profits linked to **DARYL HARRISON** or **ROBERT HARRISON**. The only known mailing address attributable to **ROBERT HARRISON** is his 9274 Great Lakes Circle, Dayton, OH 45458 residence. This residential address is inconsistent with a location from which you would normally associate legitimate business or religious/ministry operations would be based.

16. Subject investigation applied for and was granted an *ex parte* court order directing the Internal Revenue Service to search and produce federal tax records of: NESSH LLC, New Max Groups LLC, Power House of Prayer Ministries, The A.R.T. Group LLC, **DARYL HARRISON** and **ROBERT HARRISON.** This search determined that the IRS has no known record of any federal tax filings by any of the above referenced business entities, however there have been personal tax returns filed by **DARYL HARRISON** and **ROBERT HARRISON** during the past four tax years. **DARYL HARRISON's** reported gross income on his joint tax returns for each of these years was listed as $15,000. **ROBERT HARRISON's** joint tax returns reflected in excess of $100,000 gross income yearly.

17.    A review of online databases has revealed a website (http://newmaxgroup.com) associated with the New Max Group, based in Ghana, Africa. **DARYL HARRISON's** photo appears on said website listed under the name and title "Prince Daryl Attipoe" (http://newmaxgroup.com/prince-daryl-attipoe/).

18.    A check of the NCIC database revealed that **DARYL HARRISON** was previously convicted in the Montgomery Court of Common Pleas (Case No. 2010-cr-03697) of: Aggravated Theft (F3); Grand Theft (F4); and Grand Theft (F4).

19.    Additional online searches have revealed that the Good News Outreach Ministries maintains a website at (https://goodnewsoutreachministries.com/). This entity is reportedly based in Ghana, Africa. **DARYL HARRISON's** photo can be found on said website listed under the name and title "Prophet Daryl Attipoe" (https://goodnewsoutreachministries.com/team/). "Prophet Daryl Attipoe" is listed as the International Representative in the U.S. A social media account on Twitter belonging to PHOP contains an old retweet of a Good News Outreach Ministries tweet as well; further linking PHOP, New Max Group, **DARYL HARRISON** and **ROBERT HARRISON**.

20.    **DARYL HARRISON** has recently been observed driving two high end motor vehicles in the SDOH, to wit: a Dodge Viper and a large 4-door Mercedes-Benz. An Ohio BMV database search has confirmed a Dodge Viper (OH license plate GOF3783) and Mercedes-Benz (OH license plate GMG3977) both being registered to **ROBERT HARRISON**, 9274 Great Lakes Circle, Dayton, OH 45458.

21.    On January 31, 2020, USSS Special Agent Ethan Simms conducted surveillance of the residence located at 9274 Great Lakes Circle, Dayton, OH 45458. Agent Simms observed a Kia automobile driven by an older black male, park in front of the garage. The driver was then observed thereafter exiting this vehicle and entering the residence through the garage door. Ohio BMW records indicate that **ROBERT HARRISON** of 9274 Great Lakes Circle, Dayton, OH 45458 is the registered owner of a Kia automobile, bearing OH license plate GEC4518.

22.    Your Affiant has conducted numerous "open" and "closed" source database searches on 9274 Great Lakes Circle, Dayton, OH 45458. These searches confirm that this residence is reportedly occupied a **ROBERT HARRISON**.

23.    Based upon your Affiant's prior law enforcement training and experience working white collar/fraud criminal investigations, he has become aware that individuals engaging in such fraud crimes commonly and typically:

    a.    Convert fraudulently acquired funds into material possessions for resale to third parties; individually or in bulk. Payment for such items frequently are made in the form of cash, wire transfers and/or Bitcoins; and

    b.    Maintain lists and records of past victims, purchases, names, addresses, and/or telephone numbers of victims and associates, in the form of books, paper notes,

notebooks, computer files, telephone texts, cell phone address and contact lists, digital address books and/or other miscellaneous notes and papers.

24. Based on the foregoing facts, your Affiant believes probable cause exists to conclude that **DARYL HARRISON** and **ROBERT HARRISON**, have knowingly, willfully and unlawfully combined, conspired, confederated, and agreed to commit certain offenses against the United States to include: Wire Fraud (18 U.S.C. § 1343); Bank Fraud (18 U.S.C. 1344); Attempt and Conspiracy (18 U.S.C. §§ 371 and 1349); and Money Laundering (18 U.S.C. §§ 1956 and 1957). As such probable cause further exists to believe that relevant evidence, fruits, and instrumentalities of such violations are likely to be located and found at the above referenced residence.

25. Based on my prior training and experience, your Affiant knows that it is common and typical for individuals involved in white collar fraud schemes (such as those described in subject case), to store, hide and secrete records, documents, bank records, financial records, credit card records, victim names, addresses and telephone numbers, both in "hard copy" format and in electronic media, at certain places and locations they control and otherwise feel safe and secure in. These typical locations include personal residences, personal safes, personal offices, personal lockers, personal motor vehicles, and on and off-site storage facilities.

26. Based on the facts set forth in this affidavit, your Affiant believes that there is probable cause to conclude relevant evidence representing the fruits and instrumentalities of the following suspected crimes: Wire Fraud (18 U.S.C. 1343); Bank Fraud (18 U.S.C. 1344); Attempt and Conspiracy (18 U.S.C. 371 and 1349); Laundering of Monetary Instruments (18 U.S.C. 1956) and Engaging in Monetary Transactions in Property Derived from a Specified Unlawful Activity (18 U.S.C. 1957) will be found at the residence located at 9274 Great Lakes Circle, Dayton, OH 45458.

27. Wherefore, your Affiant respectfully requests that a search warrant be issued authorizing the search of aforesaid described property as more specifically set forth in Attachment "A", for specific items as more specifically described and set forth in Attachment "B" to this affidavit.

Further your affiant sayeth naught.

James R Teuschl
JAMES R. TEUSCHL
Senior Special Agent
United States Secret Service

Subscribed and sworn to before me on this 11th day of March, 2020.

Sharon L Ovington
SHARON L. OVINGTON
UNITED STATES MAGISTRATE JUDGE

5

## ATTACHMENT A

### Property to Be Searched

A single family 2 story condo home located at 9274 Great Lakes Circle, Dayton, OH 45458, in Montgomery County, OH. Behind the residence is small back yard with two ponds nearby. The house is adjacent to other similarly constructed older condo residences to the left, across and rear. The house has white painted siding, grey trim around windows, white double garage door with windows, red brick facade, light grey colored roof and small driveway to right of garage. The residence is numerically marked with the numbers 9274 to the right of garage door, in between garage and grey front door.

Additionally, any vehicle(s) not herein identified in this warrant that may be parked or located on the curtilage of the property identified above.





## ATTACHMENT B

### Property to be seized

Based on the foregoing, I respectfully submit that there is probable cause to believe that the following items will be found at 9274 Great Lakes Circle, Dayton, OH 45458:

a.   Books, records, amounts of cash in excess of $100, invoices, receipts, financial statements, bank statements, canceled checks, deposit tickets, passbooks, money drafts, withdraw slips, certificates of deposit, letters of credit, bank drafts, cashier's checks, bank checks, safe deposit box keys, money wrappers, wire transfer applications and/or receipts, fictitious identification, and other items evidencing the obtaining, secreting, transfer, concealment, and/or expenditure of money. Records of all assets purchased, obtained, and sold, all liabilities incurred or disposed of, and all expenditures paid either for the subjects, their nominees, or entities.

b.   Electronic equipment, such as, laptop, palm pilots, electronic PDA's (personal diaries and address books), pagers (digital display beepers), telephone answering machines, telephone caller identification boxes, video and audio cassette tapes, and any stored electronic communications contained therein.

c.   All cellular and "smart" telephones to include their SIM cards, all related documentation and all stored data to include passwords, encryption keys, access codes, SIM passwords, files, programs, ring tones, pictures, videos, phone books, call history, voice mail, e-mail, text messages, deleted messages audio and/or text and geographical information, and proof of ownership to include correspondence, registration keys or similar items and all cellular related accessories not specifically mentioned herein. To be able to download/retrieve all information from the cellular telephone and put all data into human readable form.

d.   Photographs, including still photos, digital images, negatives, video tapes, digital videos, films, undeveloped film and the contents therein, slides, in particular, photographs of co-conspirators, of assets and/or criminal activity.

e.   Address and/or telephone books, rolodex indices, and any papers reflecting names, addresses, telephone numbers, pager numbers, fax numbers of co-conspirators, sources of supply, storage facilities, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists.

f.   Indicia of occupancy, residency, rental and/or ownership of the premises described above or vehicles located thereon, including, but not limited to utility and telephone bills, canceled envelopes, keys, deeds, purchase lease agreements, land contracts, titles, and vehicle registrations.

g.   The opening and search, and removal, if necessary, of any safe or locked receptacle or compartment, as some or all of the property heretofore may be maintained.

1

h.   Computer system hardware including but not limited to word processing equipment, modems, printers, plotters, encryption circuit boards, optical scanners, and other computer related devices, and software including floppy disks, external hard drives, USB drives (i.e. thumb drives), and any other medium which is capable of storing magnetic tape or optical coding, software programs, and any other programs, or software used to communicate with computer hardware or peripherals either directly or indirectly via telephone lines, radio, or other means of transmission, computer manuals relating to the operation of a computer system, computer software, and/or related device.

Any and all of the information described above that may be stored on magnetic/electronic media. This includes information stored on computer hard drive, diskettes, tapes, or any other media capable of storing information in a form readable by a computer. This also includes all copies of the information described above that may be stored on such media as archive or backup copies. The agents searching for such information are authorized to search:

Any desktop, laptop, or other "personal computer" in the residence or business, to copy all of the above-referenced information stored on such computer(s) or accessible through such computers, if connected to other computers through a network of computers, and diskettes or tapes found in such residence or business work area;

Any file(s), storage area or directory on a network server to copy any and all of the above-described information that may be found on computer(s), and any diskettes or tapes that may contain such information; and

Any other storage area of any file server or computer which the information described above might be found or stored. The search of such computers or storage areas of such computers shall be limited to seeking information that fit within the above-described information.

In the event that the agents cannot obtain access to any subject computer or cannot search for or copy information contained on that computer, the agents are then authorized to seize such computer and remove it to a laboratory setting for a sufficient period of time to obtain access to, search for, and recover the files and records described herein. Such computer may be "imaged." An image is a pristine, bit-by-bit reproduction of the subject's computer hard drive. In addition, if the files and records cannot be read and understood without the software or programs that created those files or records, the agents are authorized to seize such software and any documentation and manuals that describe the software and give instructions on its installation and use.

i.   Records and information relating to a conspiracy to defraud relating to First Financial Bank, US Bank, Wright-Patt Credit Union, JP Morgan Chase and any other financial institution or entity from which funds can be obtained.

2

j.    Records and information relating to communications with the following non-profits and/or for profit LLCs:

Powerhouse of Prayer Ministries (PHOP)
New Max Group
NewMax Group LLC
New Max Mines
A N S Remediation
4A Capital Group LLC
Harrison & Harrison Home and Investments LLC
NESSH LLC
P&NT LLC
The A.R.T. Group LLC
Top Notch Rehab & Remodeling LLC
Any additional non-profit or for profit LLC linked to that address and/or Robert Harrison, Daryl Harrison or Daryl Attipoe.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.